FILED

2015 Jun-22  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **FRESHUN FLOWERS BEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:14-cv-02205-RDP** |
| | } | |
| **KENNETH ABRAMS, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on the following motions: Defendants John Conger, Steven Westbrook, and Anthony Parker's (collectively "Defendant Officers") Motion to Dismiss (Doc. 17), filed February 17, 2015; Defendants Kenneth Abrams, Raymond Anderson, and Patrick Collard's (collectively "Defendant Sheriffs") Motion to Dismiss (Doc. 20); and Plaintiff's Motion for Judge's Rule (Doc. 28), filed April 23, 2015.  The issues raised therein have been fully briefed by the parties and are now ripe for decision.  (Docs. 23, 26, 27).

This case arises from the March 8, 2014, arrest and subsequent detainment of Plaintiff Freshun Flowers Bey.  Essentially, Plaintiff brings two separate actions.  First, Plaintiff asserts claims against Defendant Officers based upon his arrest at his home.  Second, Plaintiff asserts claims against Defendant Sheriffs for abusive treatment during his subsequent detention at the Tuscaloosa County Jail.  Plaintiff is proceeding *pro se* and has asserted numerous state and federal law claims.  After careful review, the court finds Defendants' motions to dismiss are due to be granted in part and denied in part.

## I.     Background[1]

Construed liberally, Plaintiff's Amended Complaint (Doc. 13) asserts the following causes of action in connection with his arrest and detention: Count One — state and federal law false arrest and false imprisonment claims against all Defendants (Doc. 13, ¶¶ 27-29); Count Two — Fourth Amendment unreasonable search and seizure claims against Defendant Officers (*id.* at ¶¶ 30-37); Count Three — Fifth Amendment just compensation and due process claims against all Defendants (*id.* at ¶¶ 38-39); Count Four — Seventh Amendment excessive force claims against Defendant Sheriffs (*id.* at ¶¶ 40-41); Count Five — Eighth Amendment excessive bail claims against Defendant Officers and Eighth Amendment cruel and unusual punishment claims against all Defendants (*id.* at ¶¶ 42-47); Count Six — state law assault and battery claims against Defendant Sheriffs (*id.* at ¶¶ 48-51); Count Seven — a generic 42 U.S.C. § 1983 excessive force claim against Defendant Officers (*id.* at ¶¶ 52-56); Count Eight — claims for various unspecified human rights violations against Defendant Sheriffs (*id.* at ¶¶ 57-58); Count Nine — a state law negligent infliction of emotional distress claim against all Defendants (*id.* at

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). A plaintiff's allegations may or may not be the "actual facts" in a case, but they are accepted as true for purposes of evaluating a motion to dismiss. Accordingly, the facts set out herein are taken primarily from Plaintiff's Amended Complaint (Doc. 13), and they are assumed true for purposes of this Memorandum Opinion.

However, some of these facts are also taken from the recording (flash-drive) of the underlying incident, submitted by Plaintiff. Because the video recording was attached to Plaintiff's Amended Complaint as an Exhibit (*see* Doc. 13, Ex. B), Plaintiff asserts -- and Defendants do not dispute (*see* Doc. 17, at 2) -- that it may be considered by the court in the motion to dismiss proceedings. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (in considering a motion to dismiss "the court limits its consideration to the pleadings and exhibits attached thereto"); *see also Steen v. City of Pensacola*, 809 F. Supp. 2d 1342, 1344 & n.2 (N.D. Fla. 2011) (considering video from police officers dashboard-mounted camera on motion to dismiss involving section 1983 claims alleging excessive force). Therefore, the court can (and will) consider the recording and other evidence submitted with Plaintiff's Amended Complaint in deciding the pending motions to dismiss (Docs. 17, 20).

¶¶ 59-63); and Count Ten — a claim for violation of the "Minimum Contact Doctrine" against Defendant Officers (*id.* at ¶¶ 64-65).[2]

On March 8, 2014, Defendant Officers, who were employed with the City of Northport, arrested Plaintiff Freshun Flowers Bey at his home at 1702 Martin Luther King Blvd.  (*Id.* at ¶ 10; *see also* Doc. 13, Ex. A).  Two police officers knocked loudly on his front door, and Plaintiff answered, "who is it?"  (*Id.* at ¶¶ 11-13).  Plaintiff alleges the officers yelled "open the fucking door."  (*Id.* at ¶ 13).  Plaintiff opened the door, and the officers stated they had an arrest warrant for "Tammie Smith," known by Plaintiff as Tammie Smith Bey ("Tammie" or "Tammie Smith Bey").[3]  (*Id.* at ¶¶ 14-15).  Plaintiff claims he asked for the officers to identify themselves and to show him the warrant, but the Defendant Officers refused to do so.  (*Id.* at ¶ 16).  Plaintiff then presented the officers with his and Tammie's "American National I.D.'s authenticated by the department of state."  (*Id.* at ¶ 17).  He contends that, without warning or explanation, Defendant Officers pulled Plaintiff out of his home and wrestled him to the ground.  (*Id.* at ¶ 18).

On the other hand, Defendants Officers argue that "Plaintiff refused to allow the Police Officer Defendants to arrest Tammie Smith Bey, clearly present at the time, by closing the door on them and by repeatedly asserting they had no authority to detain her."  (Doc. 17, at 7).  Officer Westbrooks' Deposition and Charge Sheet, submitted as Exhibit D to Plaintiff's Amended Complaint, confirms that Defendant Officers initiated contact with Plaintiff as he attempted to close his door. (*See* Doc. 13-4, at 6 ("Officers kept asking [Plaintiff] to tell Ms.

---

[2] In Count Eleven, Plaintiff asserts a claim for "Joinder of Claims" under Rule 18 and 28 U.S.C. § 1367. (*Id.* at ¶¶ 66-67).  The court construes this as a statement of jurisdiction, rather than as an independent claim for relief.  Section 1367 provides a jurisdictional basis for the court to entertain Plaintiff's state law claims with Plaintiff's federal claims under the theory of supplemental jurisdiction.  Rule 18 of the Federal Rules of Civil Procedure similarly addresses a party's ability to join claims.

[3] Plaintiff alleges that, although Tammie was present at his home on March 8, 2014, she actually resides at 1706 Martin Luther King Blvd.  (*Id.* at ¶ 19 (citing an arrest warrant for Tammie Smith Bey, indicating that her address is 1706 Martin Luther King Blvd.)).

Smith to come outside to serve her writ; however, [Plaintiff] refused and attempted to close the door. Officer Parker stopped the door from shutting and grabbed [Plaintiff] to put him into custody for Obstructing Governmental Operations.")).

Plaintiff and Tammie were then arrested by the Defendant Officers, and Plaintiff was taken to the Tuscaloosa County Jail, where Plaintiff was transferred into the custody of Defendant Sheriffs.  (*Id.* at ¶ 18).  While at the Tuscaloosa County Jail, Plaintiff alleges that the Defendant Sheriffs handcuffed Plaintiff and then tased, assaulted, and "tortured" him several times for refusing to give certain identifying information.  (*Id.* at ¶¶ 22, 41).  Plaintiff alleges that due to this confrontation he suffered a torn tendon in his right shoulder, along with swelling in his knee, back, and wrist.  (*Id.* at ¶¶ 23, 41).  Plaintiff was incarcerated for three days and claims his bail was set at $25,000 dollars.  (*Id.* at ¶ 24).  Although Plaintiff was initially charged with resisting arrest and second degree assault, his charges were subsequently revised to allege that he resisted arrest and obstructed governmental operations.  (*Id.* at ¶¶ 25-26).

## II.    Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Still, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the

complaint in the light most favorable to the nonmoving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,' " the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. After *Iqbal*, which applied the *Twombly* pleading standard in a civil rights/qualified immunity context, "there is no longer a 'heightened pleading' standard in 'cases governed by Rule 8(a)(2), including civil rights [cases]' under § 1983." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (quoting *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010)). The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as . . . factual allegation[s]." *Iqbal*, 556 U.S. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion,

the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

Nevertheless, "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). Therefore, "wildly implausible allegations in the complaint should not be taken to be true, but the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations." *Miller v. Donald*, 541 F.3d 1091 (11th Cir. 2008).[4]

## III.    Discussion

Plaintiff has asserted a number of federal and state law claims against Defendant Officers and Defendant Sheriffs based on their involvement in Plaintiff's March 2014 arrest and confinement. Defendants have moved for summary judgment on all of Plaintiff's claims. For the reasons outlined below, the court concludes that Defendants' Motions (Docs. 17, 20) are due to be granted in part and denied in part.

---

[4] The court briefly pauses to correct a misstatement of law in Defendant Officers' Motion (Doc. 17). Defendant Officers state:

> [T]he Eleventh Circuit "has established a heightened pleading standard applicable to § 1983 claims." *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1179 (11th Cir. 2009). In such cases, the complaint must allege the relevant facts "with some specificity." *Dairymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003). "More than mere conclusory notice pleading is required . . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Id.* (quoting *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).

(Doc. 17, at 5). Until relatively recently, this heightened standard was a requirement which applied to section 1983 complaints. In *Randall v. Scott*, however, the Eleventh Circuit determined that "[a]fter *Iqbal* it is clear there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." 610 F.3d 701, 710 (11th Cir. 2010).

### A.      Plaintiff's Federal Claims Against Defendant Officers

Counts One, Two, Three, Five, and Seven of Plaintiff's Amended Complaint assert a number of federal law claims against Defendant Officers, including claims for false arrest, false imprisonment, just compensation, violations of due process, excessive bail, cruel and unusual punishment, and excessive force.   (*See* Doc. 13, ¶¶ 27-39, 42-47, 52-56).   After analyzing Plaintiff's official capacity claims, the court addresses each federal, individual capacity claim in the context of the qualified immunity defenses raised by Defendant Officers.

### 1.      Plaintiff's Official Capacity Claims

Plaintiff attempts to bring claims against Defendant Officers, "individually as well as in their official capacity."  (Doc. 13 at ¶ 53).  Plaintiff's "official capacity" section 1983 claims are actually claims against City of Northport.  *See Brandon v. Holt*, 469 U.S. 464, 472 n.21 (1985) ("[O]fficial capacity suits generally represent only another way of pleading an action against the entity of which an officer is an agent."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (official capacity suits are, "in all respects other than name . . . treated as a suit against the entity."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and as such, "it is no different from a suit against the State itself").  Suits against an individual acting in his official capacity impose liability on the governmental entity the official represents. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . .").

Plaintiff's official capacity claims against Defendant Officers are really claims against the City of Northport. But to hold the City of Northport liable, Plaintiff is required to make a colorable showing of some basis for municipal liability. He has not done so.

To sustain a section 1983 claim against a municipality, a plaintiff must identify an official policy or custom that caused the constitutional injury alleged. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (holding municipalities could not be held liable under section 1983 under a *respondeat superior* theory alone).

Plaintiff does not plead, nor attempt to plead, any official policy or custom stating a cause of action against the City of Newport (the "City") under section 1983. There is no suggestion in his Amended Complaint or the record to support a contention that any official policy or custom of the City was the impetus behind any alleged unconstitutional actions of the individual officers. In addition to the fact that Plaintiff has failed to identify any unconstitutional policy of the City, there has also been no showing that Plaintiff's claims can be connected to any policy attributable to a final policymaker for the City.

Therefore, Plaintiff cannot sustain a claim against Defendant Officers in their official capacity. Accordingly, Plaintiff's official capacity claims against Defendant Officers are due to be dismissed.

## 2.    Plaintiff's Individual Capacity Claims

The court reads Plaintiff's Amended Complaint to raise four separate claims implicating federal, individual capacity claims against Defendant Officers: (1) Fourth Amendment unreasonable seizure claims (Doc. 13, at ¶¶ 30-37 (Count Two)); (2) Fifth Amendment just compensation and due process claims (*id.* at ¶¶ 38-39 (Count Three)); (3) Eighth Amendment excessive bail and cruel and unusual punishment claims (*id.* at ¶¶ 42-47 (Count Five)); and (4) a

stand alone 42 U.S.C. § 1983 claims for generic "civil rights violations" (*id.* at ¶¶ 52-56 (Count Seven)). Defendant Officers have asserted qualified immunity as a defense to all of Plaintiff's federal, individual capacity claims, and the court addresses each alleged violation within the qualified immunity framework.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While qualified immunity is typically addressed at summary judgment, it may be "raised and considered on a motion to dismiss." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). Indeed, the "driving force" behind the creation of the qualified immunity doctrine was a desire to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Accordingly, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

Qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla*., 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28

F.3d 1146, 1149 (11th Cir. 1994). "We generally accord . . . official conduct a presumption of legitimacy." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991).

The court determines whether a defendant is entitled to qualified immunity by engaging in a three-step analysis. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on the official claiming qualified immunity to establish that he was acting within his discretionary authority. *Id.* Upon that initial showing, the burden shifts to the plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Id.* at 1136-37 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Finally, "the plaintiff must show that the violation was 'clearly established.' " *Id.* at 1137; *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." (citing *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001) (en banc))). If Defendant Officers can establish that they are entitled to qualified immunity, then the federal, individual capacity claims will be dismissed. *See Randall*, 610 F.3d at 714.

### (a)   Discretionary Function Analysis

As a threshold matter, the court readily concludes that the well plead facts, *i.e.*, those facts alleged in the Amended Complaint and indicated by Plaintiff's video recording attached to that pleading, show plainly that Defendant Officers were, at all relevant times, on duty at the time of Plaintiff's arrest. "A government official proves that he acted within the purview of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Sims v. Metro. Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992) (internal

citations and quotation marks omitted).  In determining whether this test is met, the court does not analyze whether the official actually acted lawfully.  *See id.*  Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the governmental officer's] discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998); *see also Godby v. Montgomery Cnty. Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998) ("It is perfectly logical for a court to find that someone who was acting illegally was acting within his discretionary authority.").

Looking objectively at the circumstances described in the Amended Complaint, and notwithstanding Plaintiff's arbitrary "nondiscretionary" label repeated throughout his opposition brief (*see* Doc. 23, at 2-5),[5] it is clear that the Defendant Officers' arrest of Plaintiff was undertaken pursuant to their official duties stemming from the execution of the Tammie Smith Bey arrest warrant.  According to Plaintiff, Defendant Officers arrived at Plaintiff's residence in uniform stating that they had an arrest warrant for Tammie.  (Doc. 13, ¶¶ 14-15).  At some time after Plaintiff asked the officers to identify themselves and to see their warrant, Defendant Officers pulled Plaintiff out of his house and threw him on the ground.  (*Id.* at ¶¶ 16-18).  Defendant Officers then arrested Plaintiff for his alleged interference.  (*See id.* at ¶¶ 25-26).  Executing on an arrest warrant (in the manner in which Defendant Officers are alleged to have done) cannot plausibly be argued to be unrelated to, or beyond the outer perimeter of, an officer's discretionary duties.

The court concludes that Defendant Officers were, without question, acting within the scope of their discretionary authority. Therefore, the burden shifts to Plaintiff to show that the officers' conduct violated a clearly established statutory or constitutional right.  *See Skop*, 485 F.3d at 1136-37.  For the reasons outlined below, Plaintiff has not stated claims for violations of

---

[5] The court is at a loss to give legal meaning to this term sporadically used by Plaintiff.

the Fifth Amendment, or Eighth Amendment, or for generic "civil rights claims." However, at this stage, the court finds that absent some limited and targeted discovery, a qualified immunity decision on certain of Plaintiff's Fourth Amendment claims would be premature.

### (b)       Plaintiff's Fourth Amendment Claims

### i.       Plaintiff's False Arrest Claims

The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, guarantees the right against unreasonable searches and seizures. U.S. Const. amend. IV; *see Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). Whether a warrantless arrest of a person, which is a seizure, is reasonable depends on a finding of probable cause. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). That is, an arrest without a warrant and lacking probable cause violates the Constitution and can underpin a section 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010); *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009).

Even without probable cause, an arresting officer may still be shielded from individual liability pursuant to the doctrine of qualified immunity if his "actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Case*, 555 F.3d at 1327 (emphasis added) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In wrongful arrest cases, the Eleventh Circuit has defined the "clearly-established" prong as requiring an "arguable probable cause" inquiry. *Case*, 555 F.3d at 1327 ("Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed.") (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the

12

Defendants could have believed that probable cause existed to arrest." *Lee*, 284 F.3d at 1195 (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001)).

Thus, the qualified immunity inquiry in the context of an arrest focuses on whether or not the officer reasonably, although perhaps mistakenly, believed that probable cause existed. *Id.* The facts of the case and the elements of the crime dictate whether or not probable cause, or arguable probable cause, existed for an arrest. *Skop*, 485 F.3d at 1137-38; *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004) ("Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime.").

Because the police had no warrant for Plaintiff's arrest, Defendant Officers must show that Plaintiff's arrest, at least, was based on arguable probable cause. Here, Plaintiff was reportedly arrested because he acted in a manner which interfered with law enforcement's attempts to arrest Tammie Smith Bey. Under Alabama law, "[a] person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person." Ala. Code § 13A-10-41(a) (emphasis added). Defendant Officers argue they had at least arguable probable cause to believe that Plaintiff was unlawfully resisting the arrest of Tammie Smith Bey "by closing the door on them and by repeatedly asserting they had no authority to detain her." (Doc. 17, at 7).[6]

---

[6] Initially, Defendant Officers claimed Plaintiff was arrested for obstructing governmental operations. (*See* Doc. 13-4, at 6). In Alabama, "[a] person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he: (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or (2) Intentionally prevents a public servant from performing a governmental function." *Ruffino v. City of Hoover*, 891 F. Supp. 2d 1247, 1268 (N.D. Ala. 2012) (quoting Ala. Code § 13A-10-2(a)). By the statute's explicit language, however, "resisting arrest itself is exempt from the crime of obstructing governmental operations." *Manning v. Moore*, No. 1:10-cv-925-MEF, 2012 WL 3879281, at *9 (M.D. Ala. Sept. 6, 2012); Ala. Code § 13A-10-2(b) (The statute "does not apply to the obstruction, impairment or hindrance of the making of an arrest.").

Generally, under the Fourth Amendment, police with a valid arrest warrant for a suspect are permitted to enter the suspect's home to arrest her absent a search warrant, so long as the police have a reasonable belief that she will be there. *Payton v. New York*, 445 U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); *see also Steagald v. United States*, 451 U.S. 204, 214-15, n.7 (1981) ("Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home."). However, "[i]f the person is in a third party's home, absent consent to enter, a search warrant for the residence must be obtained in addition to the arrest warrant." *Steagald*, 451 U.S. at 211-22.

Taken as true, Plaintiff's factual allegations suggest that he was within his Fourth Amendment rights to refuse Defendant Officers' entry into his home. This raises an important question — how could Plaintiff be unlawfully resisting Tammie's arrest at the same time that he was lawfully exercising his Fourth Amendment rights.[7] Plaintiff has plausibly alleged that Defendant Officers forced their way into his house and forcibly arresting him without a search warrant, his consent, or exigent circumstances. If that is actually what occurred, there is a

---

Defendant Officers have not offered a theory as to what governmental function Plaintiff was obstructing — other than (arguably) the arrest of Tammie. (Doc. 17 at 7). And, nothing in the facts supports a finding that the officers had reason to believe that Plaintiff was using physical force or intimidation to hinder or prevent any other government operation. Therefore, Defendant Officers cannot be said to have had even arguable probable cause to arrest Plaintiff for obstructing government operations under § 13A-10-2(b).

[7] Absent exigent circumstances or consent, a plaintiff has a Fourth Amendment right to require the police officers to obtain and present a search warrant before entering his house to search for and arrest a third party. *See Steagald*, 451 U.S. at 211-22. (Of course, this analysis would be entirely different if Defendant Officers reasonably believed that Plaintiff's home was also Tammie's residence. *See Payton*, 445 US. At 603; *see also Steagald*, 451 U.S. at 214-15 n.7). Consent is not at issue here, and nothing in either Plaintiff's Amended Complaint or Defendant Officers briefs suggest that Defendant Officers had any reason to believe that exigent circumstances were involved here. Plaintiff's refusal to open his home to Defendant Officers was consistent with his clearly established Fourth Amendment right to be free from unreasonable search and seizure.

substantial question as to whether Defendant Officers violated Plaintiff's clearly established Fourth Amendment rights.[8]

Even considering the video submitted as Exhibit B to Plaintiff's Amended Complaint, the court concludes that Plaintiff has, at this stage, overcome Defendant Officers' assertions of qualified immunity. Although the video does not capture the initial exchange between Plaintiff and Defendant Officers, at this early juncture, the court cannot say that it undermines Plaintiff's version of facts with respect to the events that are recorded.[9]

Finally, even if the court were to credit the factual assertions by Defendant Officers' briefs, the court would nevertheless conclude that Plaintiff has, at least on his pleadings, made an initial showing that Defendant Officers were in violation of his clearly established Fourth Amendment rights. Defendant Officers argue that the resisting arrest charge against Plaintiff is supported by arguable probable cause because "Plaintiff refused to allow the Police Officer Defendants to arrest Tammie Smith Bey, clearly present at the time, by closing the door on them and by repeatedly asserting they had no authority to detain her." (Doc. 17, at 7). Officer Westbrooks' Deposition and Charge Sheet, submitted as Exhibit D to Plaintiff's Amended Complaint, confirms that Defendant Officers initiated contact with Plaintiff as he attempted to close his door. (*See* Doc. 13-4, at 6 ("Officers kept asking [Plaintiff] to tell Ms. Smith to come

---

[8] Plaintiff's Amended Complaint alleges that Plaintiff answered his door to uniformed police officers threatening and cursing him. (Doc. 13, ¶¶ 11-13). Defendant Officers told Plaintiff that they had an arrest warrant for Tammie Smith Bey, and Plaintiff requested to see it but was ignored. (*Id.* at ¶¶ 15-16). Plaintiff then offered Defendant Officers "American National I.D.'s" for Tammie Smith Bey and himself. (*Id.* at ¶¶ 17-18). Without ever identifying themselves, Defendant Officers became frustrated and, unprovoked, came into Plaintiff's home, pulled him out, and wrestled him to the ground. (*Id.* at ¶¶ 16-18). Based on the Plaintiff's allegations, the court cannot say at this early point that Defendant Officers had arguable probable cause to arrest Plaintiff for resisting the arrest of Tammie Smith Bey.

[9] The video depicts Plaintiff handing over some form of identification of himself and Tammie to the others before being forcibly removed from his home and wrestled to the floor of his porch. To be sure, the video is unclear as to who initiated the physical altercation and whether Defendant Officers reasonably believed that the home was Tammie Smith Bey's residence.

outside to serve her writ; however, [Plaintiff] refused and attempted to close the door. Officer Parker stopped the door from shutting and grabbed [Plaintiff] to put him into custody for Obstructing Governmental Operations.")).  The video does not unambiguously confirm Defendant Officers' allegations that Plaintiff closed the door on them; but, even if he did, it is unclear how this action would create exigent circumstances authorizing Defendant Officers to force their way into Plaintiff's home and forcibly remove him without a search warrant. Defendant Officers have not alleged that this sequence presented any exigent circumstances requiring their immediate action.   Indeed, to the extent Defendant Officers rely solely on the perceived inconvenience that Plaintiff caused as justification for his arrest, the court must question their position.  (*Id.*).  If, as he alleges, the circumstances here dictate that Plaintiff was well within his Fourth Amendment rights to require Defendant Officers to present him with more (*e.g.*, a search warrant for his premises, or an arrest warrant for either Plaintiff or for Tammie to be served at Plaintiff's address) before using force to enter his home, that may be enough to get past Defendant Officers' assertion of qualified immunity.  *See Steagald*, 451 U.S. at 211-22.

Taking Plaintiff's allegations as true, there is a substantial question as to whether reasonable officers in the same circumstances and possessing the same knowledge as Defendant Officers could have believed that probable cause existed to arrest Plaintiff for resisting Tammie's arrest. Therefore, Defendant Officers have not (at least at this point) demonstrated that they had arguable probable cause to arrest Plaintiff.   Accordingly, because Plaintiff has sufficiently alleged that Defendant Officers violated Plaintiff's clearly established constitutional rights, Defendant Officers are not entitled to qualified immunity at this stage.

### ii.      Plaintiff's False Imprisonment Claims

A section 1983 false imprisonment claim arises where the common law elements of false imprisonment are accompanied by a Fourteenth Amendment due process violation.  *See Cannon v. Macon County*, 1 F.3d 1558, 1562-63 (11th Cir. 1993).  "A detention on the basis of a false arrest presents a viable [section] 1983 action."  *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Reeves v. City of Jackson*, 608 F.2d 644 (5th Cir. 1979)).  "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* at 1526 (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).  Because the court has concluded, for the purpose of this Motion (Doc. 17), that Defendant Officers have not at this time demonstrated that they had arguable probable cause to arrest Plaintiff for any crime under Alabama law, and Plaintiff was detained in the Tuscaloosa County Jail for a period of time, the court finds that Defendants are not entitled to judgment as a matter of law as to Plaintiff's false imprisonment claim based on their assertions of qualified immunity.  Accordingly, Defendant Officers' Motion (Doc. 17) is due to be denied as to Plaintiff's section 1983 false imprisonment claim.

### iii.     Plaintiff's Excessive Force Claims

Plaintiff asserts that Defendant Officers used "excessive and deadly force" in the course of grabbing Plaintiff out of his dwelling and arresting him in violation of his Fourth Amendment rights.  (Doc. 13, ¶ 45(a)).  The Eleventh Circuit has made clear that "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1331-32 (11th Cir. 2006) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)).  The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat

thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "It follows, then, if an arresting officer does not have the right to make an arrest, he does not have the right to use *any* degree of force in making that arrest." *Bashir*, 445 F.3d at 1331-32.

An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (*i.e.*, non-*de minimis* force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest. *Id.* at 1332. When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest. *Id.* A claim like Plaintiff's -- that Defendant Officers used excessive force in his arrest because they lacked the authority to make the arrest -- is not a discrete constitutional violation; rather, it is dependent upon and inseparable from his false arrest claim. *See id.* (citing *Jackson*, 206 F.3d at 1171). "[W]here an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." *Id.* (citing *Jackson*, 206 F.3d at 1171; *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995)). Therefore, because Plaintiff has not presented a discrete excessive force claim against Defendant Officers, his excessive force claim fails as a matter of law.[10]

(c)     **Plaintiff's Fifth Amendment Claims**

As to both sets of Defendants, Plaintiff contends that he "was deprived of his liberty and property as far as being taken to jail as a private person and put into the public use without just

---

[10] Of course, Plaintiff may still be able to recover damages for the force used in his arrest. The damages recoverable on a false arrest claim "include damages suffered because of the use of force in effecting the arrest." *Williamson*, 65 F.3d at 158-59; *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir. 1987) (stating that "[i]t is obvious that if the jury finds the arrest unconstitutional, the use of force and the search were unconstitutional and they become elements of damages for the § 1983 violation"). But, "to permit a jury to award damages on Plaintiff's excessive force and unlawful arrest claims individually 'would allow [him] to receive double the award for essentially the same claims.'" *Bashir*, 445 F.3d at 1332 (11th Cir. 2006) (quoting *Cortez v. McCauley*, 438 F.3d 980, 996 (10th Cir. 2006)).

compensation and exercising his fifth Amendment right." (Doc. 13, ¶ 39). Plaintiff's conclusory and vague statement fails to state any plausible claim for relief under the Fifth Amendment against Defendant Officers.

At the outset, the court finds that because Plaintiff has not claimed any property was taken from him, his Just Compensation argument completely misses the mark. U.S. Const. amend. V ("nor shall *private property* be taken for public use, without just compensation" (emphasis added)). Without an alleged deprivation of private property, the Just Compensation Clause is clearly inapplicable to the facts of this case.

Neither can Plaintiff sustain a cause of action for a violation of the Fifth Amendment's Due Process Clause against Defendant Officers. The Fifth Amendment is a limitation on the powers of the federal government, and not a restraint upon the states. *See Davidson v. City of New Orleans*, 96 U.S. 97, 99 (1877); *Sweatt v. Bailey*, 876 F. Supp. 1571, 1582 (M.D. Ala. 1995) (noting the Fifth Amendment's Due Process Clause could not provide a basis for liability because it "applies only to the federal government"); *see also Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) (noting that "[t]he Fifth Amendment obviously does not apply the acts complained of were committed by state rather than federal officials"); *Sims v. Glover*, 84 F. Supp. 2d 1273, 1288 (M.D. Ala. 1999) (dismissing Fifth Amendment Due Process claims asserted against state officials). Conversely, the Due Process Clause of the Fourteenth Amendment applies to states and municipalities. *Id.* "The rights protected by the two clauses are coextensive." *Green v. Freeman*, 434 F. Supp. 2d 1172, 1176 (M.D. Ala. 2005) (citing *Screws v. United States,* 325 U.S. 91, 123 (1945) ("The Fifth Amendment contains a due process clause as broad in its terms restricting national power as the Fourteenth is of state power.")). Nevertheless, individuals alleging due process violations against state or municipal actors must

bring their claims under the Fourteenth Amendment, rather than the Fifth Amendment. *Id.* Here, Plaintiff has not brought any claim against the federal government, but only against state or municipal actors. Accordingly, any claim by the Plaintiff for a violation of the Fifth Amendment is due to be dismissed.[11]

### (d)    Plaintiff's Eighth Amendment Excessive Bail Claims

Plaintiff (arguably) alleges that Defendant Officers violated his Eighth Amendment rights by subjecting him to an excessive bail totaling $25,000. (Doc. 13, at ¶¶ 42-43). Defendant Officers argue, in part, Defendant Officers had no role in setting Plaintiff's bail. (Doc. 17, at 14). Plaintiff's Amended Complaint falls short of stating a section 1983 claim for a constitutional violation, much less a claim against Defendant Officers.

The Eighth Amendment of the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "[T]he Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Common law tort principles of causation apply generally in the context of section 1983 claims. *Jackson*, 206 F.3d at 1168 (citing *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986)). Therefore, a public official is liable under section 1983 only if he *causes* the plaintiff to be subjected to deprivation of his constitutional rights. *Baker*, 443 U.S. at 142 (internal quotation omitted); *see also Jackson*, 206 F.3d at 1168. Accordingly, to establish an Eighth Amendment excessive bail violation, a plaintiff must

---

[11] Even if the court to construed Plaintiff's Amended Complaint as bringing a due process claim under the Fourteenth Amendment, Plaintiff's allegation is subsumed within his Fourth Amendment allegations of unlawful search and seizure. Where a claim is raised under the specific protections of the Fourth Amendment (*e.g.*, as here, for unlawful search or seizure), the claim should be pursued under that amendment and not the more generalized protections of the Due Process Clause of the Fourteenth Amendment. *See Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996) (citing *Albright v. Oliver*, 510 U.S. 266 (1994); *Graham*, 490 U.S. at 395). Accordingly, the court concludes that any of Plaintiff's Fifth Amendment claims are not independently actionable and are due to be dismissed against Defendant Officers.

demonstrate that the defendant was the actual or proximate cause of his bail enhancement.  *See Jackson*, 206 F.3d at 1168

In Alabama, the exclusive authority to set bail is vested with judicial officers.  *See* Ala. Code § 12-22-222(b) (noting "the judge or court" directs "the clerk of the court in which conviction was had to admit the defendant to bail in a sum *which may be prescribed by the court*" (emphasis added)); *see also* Ala. R. Crim. P., Rule 7.2 (making judges and magistrates of the state courts responsible for and have authority to set and reduce bond or bail).  To this end, a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision — to the extent law enforcement personnel were ever involved with that decision.  Thus, law enforcement are only liable for a deprivation of a plaintiff's right to be free from excessive bail if the officer prevented the judicial officer who set the plaintiff's bail from exercising his independent judgment.  *See, e.g.*, *Galen v. County of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007) (upholding grant of motion to dismiss in part because plaintiff could not properly allege sheriff proximately caused alleged excessive bail violation); *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998) (holding sheriff could not be liable under section 1983 for violating a plaintiff's right to be free from excessive bail, even if he recommended a bail amount to the judicial officer who set plaintiff's bail, because "setting the bail bond is entirely at the discretion of the presiding judge").

In this case, Plaintiff's Eighth Amendment excessive bail claim necessarily fails because Plaintiff has offered nothing more than a conclusory statement that Defendants "caused" his excessive bail.  (*See* Doc. 13, at ¶¶ 43 ("Do [sic] to plaintiff being incarcerated by [Defendant Officers] caused plaintiff to have excessive bail . . . .")).  As it relates to Plaintiff's Eighth

Amendment excessive bail claim, Plaintiff's pleadings contain nothing more than a recitation of one of the elements of the cause of action (*i.e.*, causation), and therefore the pleadings plainly fail to meet Rule 8 standards under *Twombly*.  *See* 550 U.S. at 555, 557.  Plaintiff does not plead a factual predicate demonstrating that the Defendant Officers in anyway influenced any judicial officer's independent judgment in setting his bail.  Plaintiff generally alleges that Defendant Officers handed him over to Defendant Sheriffs for detention in the Tuscaloosa County Jail. (Doc. 13, at ¶¶ 20-26; *see also* Doc. 22, at 6 ("While under [Defendant Sheriffs'] custody . . . what was imposed upon Plaintiff was excessive bail . . . .")).  As such, Plaintiff has not pled facts demonstrating Defendant Officers had anything to do with Plaintiff's bail.[12]  Because his pleadings are based merely upon labels, conclusions, and naked assertions (without supporting factual allegations), Plaintiff's section 1983 excessive bail claims fall woefully short of the burden he has to raise these claims for relief above the speculative level.  *See Twombly*, 550 U.S. at 555, 557.  Accordingly, because Plaintiff has failed to plead a cognizable constitutional violation, Defendants' Motion (Doc. 17) is due to be granted as to Plaintiff's excessive bail claim.

**(e)      Plaintiff's Generic Section 1983 Civil Rights Claims**

Count Seven of Plaintiff's Amended Complaint attempts to assert various "Civil Rights Claims" under 42 U.S.C. § 1983 against Defendant Officers.  He makes specific allegations of excessive force used during Plaintiff's arrest.  (Doc. 13, at ¶¶ 44-47).  The Supreme Court, however, has rejected the notion that excessive force claims can be generically brought under section 1983.  *Graham*, 490 U.S. at 393.  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Id.* at

---

[12] Neither does Plaintiff allege Defendant Sheriffs had anything to do with Plaintiff's excessive bail, only that it was "imposed" while Plaintiff was in their custody. (Doc. 22, at 6).

393-94 (quoting *Baker*, 443 U.S. at 144 n.3 (1979)).  Therefore, Plaintiff's "Civil Rights Claims" under 42 U.S.C. § 1983 are subsumed under Plaintiff's Fourth Amendment claims for false arrest and excessive force addressed below.   Accordingly, Count Seven of Plaintiff's Amended Complaint is due to be dismissed.

### B.        Plaintiff's State Claims Against Defendant Officers

Counts One and Nine of Plaintiff's Amended Complaint assert state law claims against Defendant Officers for false arrest, false imprisonment, and negligent infliction of emotional distress.  (Doc. 13, ¶¶ 27-29, 59-63).  Defendant Officers argue that state law immunity protects them from all of Plaintiff's state law claims.  (Doc. 17, at 6-7).  After analyzing Plaintiff's state-agent immunity defense, the court addresses each claim independently.

### (1)        State-Agent Immunity Analysis

Defendant Officers claim that, under Alabama law, they are entitled to state-agent immunity as to all of Plaintiff's state law claims.  For many of the same reasons that the court is unable to grant Defendant Officers qualified immunity at this (the pleadings) stage, the court also finds that now is not the appropriate time to decide state law immunity issues.

Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities."  *Brown*, 608 F.3d at 740-41 (quoting *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002)).   In *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), a plurality of the Alabama Supreme Court restated and clarified the scope of Alabama's state-agent immunity doctrine, which bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require

otherwise. *Id.* at 405. Additionally, Alabama law provides discretionary-function immunity, which immunizes law enforcement officers from certain tort liability. Ala. Code § 6-5-338(a) (1994) ("Every peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."). The *Cranman* test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a). *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005) ("The restatement of State-agent immunity as set out in *Cranman*, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)." (internal citations omitted)).

The Supreme Court of Alabama has established a two-part burden shifting framework for applying *Cranman*'s state-agent immunity test. *Brown*, 608 F.3d at 740-41 (quoting *Ex Parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)). First, a defendant bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the state agent to immunity. *Reynolds*, 946 So. 2d at 452. If the defendant makes that showing, the burden then shifts to the plaintiff to show that the state agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority. *Id.*

Notwithstanding this framework, the Alabama Supreme Court has provided a shortcut for false arrest. In these cases, the absence of "arguable probable cause" defeats an officer's claim to state-agent immunity. *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179-82 (Ala. 2003) (reversing summary judgment for officer on the basis of § 6-5-338 immunity on plaintiff's excessive force, false arrest, false imprisonment and assault and battery claims where there was evidence that could support a finding that the officer lacked arguable probable cause); *see also Mann v. Darden*, 630 F. Supp. 2d 1305, 1315 (M.D. Ala. 2009) (applying Alabama law and

denying an arresting officer's claim of immunity on state law battery claim after observing that the "Alabama Supreme Court has held that, while arrests and attempted arrests are generally discretionary functions, officers will not be given discretionary-function immunity when they act without arguable probable cause" (citing *Borders*, 875 So. 2d 1168)).

As discussed in detail above, the court concludes that Plaintiff's pleadings state a plausible claim that Defendant Officers acted without arguable probable cause. Therefore, Defendant Officers are not, at this stage, entitled to state-agent immunity.

### (2)   Plaintiff's False Arrest and False Imprisonment Claims

Plaintiff alleges that "Defendants wrongful restraint, confinement and detention of plaintiff and detention of Plaintiff against his will and without lawful or reasonable cause constituted false arrest and false imprisonment actionable under the laws of Alabama . . . ." (Doc. 13, ¶ 28). Under Alabama law, the torts of "false arrest" and "false imprisonment" have different elements. *Griffin v. Beasley*, Case No. 2:12-cv-196-WHA, 2012 WL 2339779, at *5 (M.D. Ala. June 19, 2012) (citing *Higgins v. Wal-Mart Stores, Inc.*, 512 So. 2d 766 (Ala. 1987) ("in a cause of action for false arrest, a plaintiff must prove that the defendant caused him to be arrested without probable cause"), *overruled on other grounds Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280 (Ala. 1993); *Walker v. City of Huntsville*, 62 So. 3d 474, 492 (Ala. 2010) (explaining that Alabama Code § 6-5-170 "defines false imprisonment as 'the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty'")). False imprisonment "includes directly restraining a person as well as threatening force to keep him in place or make him go where he does not wish to go." *Yabba v. Ala. Christian Acad.*, 823 F. Supp. 2d 1247, 1251 (M.D. Ala. 2011) (citing *Crown Central Petrol. Corp. v. Williams*, 679 So. 2d 651, 653 (Ala. 1996)). Therefore, "a false or unlawful arrest --

that is, an arrest without probable cause -- will support a false imprisonment claim." *Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1229 (M.D. Ala. 2012) (citing *Upshaw v. McArdle*, 650 So. 2d 875 (Ala. 1994)).

Of course, even though a state law claim for false arrest and one for false imprisonment may be distinct causes of action,[13] whether Plaintiff's claims are due to be dismissed in this context turns on whether Defendant Officers had probable cause to arrest Plaintiff at his home for resisting the arrest of Tammie Smith Bey.  Under Alabama law, "[a]n officer may make a warrantless arrest if a misdemeanor occurs in his presence." *Hawkins v. State*, 585 So. 2d 154 (Ala. 1991); *see also* Ala. Code § 15-10-3(a)(1) (allowing for a warrantless arrest "[i]f a public offense has been committed . . . in the presence of the officer").  Although resisting arrest and obstructing governmental operations are public offenses, *see* Alabama Code §§ 13A-10-2(a) and 13A-10-41(a), based upon the facts as presently pled, Plaintiff has presented sufficient allegations to suggest that Defendant Officers did not have arguable probable cause to believe that Plaintiff had committed those offenses (or that his actions exposed him to criminal liability for any crime under Alabama law).  For this reason, Defendant Officers' Motion (Doc. 17) as to Plaintiff's Count One for false arrest and false imprisonment is due to be denied.

### (3)   Plaintiff's Negligent Infliction of Emotional Distress Claims

Count Nine of Plaintiff's Amended Complaint asserts a claim for the negligent infliction of emotional distress against all Defendants.  (Doc. 13, ¶¶ 59-63).  However, as Defendant Officers correctly assert, Alabama does not recognize the independent tort of negligent infliction of emotional distress. *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1215 (M.D. Ala. 2000) (citing *AALAR, Ltd. v. Francis*, 716 So. 2d 1141, 1144 (Ala. 1998) (citing five post-1900

---

[13] The federal courts have not been consistent in their treatment of these actions.  *See Griffin*, 2012 WL 2339779, at *5 (claiming distinct actions exist); *Exford*, 887 F. Supp. 2d at 1231 ("[U]nder Alabama law, an unlawful arrest amounts to a type of false imprisonment, not a standalone tort.").

Alabama cases indicating that negligent infliction of emotional distress is not an independent tort)).  Instead, "[n]egligently causing emotional distress is not an independent tort in Alabama, but, rather, . . . [it is] part and parcel of the traditional tort of negligence." *Id.*

Therefore, as Alabama does not recognize negligent infliction of emotional distress as an independent tort and Plaintiff has failed to plead negligence, the court finds that all Defendants are entitled to judgment as a matter of law on Count Nine of Plaintiff's Amended Complaint. *See Roberts*, 114 F. Supp. at 1215 (similarly dismissing a plaintiff's negligent infliction of emotional distress claims where the plaintiff failed to plead negligence).

### C.     Plaintiff's Federal Claims Against Defendant Sheriffs

Plaintiff's Amended Complaint can be read as alleging Defendant Sheriffs violated Plaintiff's Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendment rights.  As best the court can discern, Plaintiff's claims against Defendant Sheriffs are based on allegations that while Plaintiff was in the custody at the Tuscaloosa County Jail, he was (1) falsely imprisoned, (2) subjected to excessive force for his failure to identify himself, and (3) suffered Fifth Amendment just compensation and due process violations.  Defendant Sheriffs raise a number of defenses including qualified immunity.[14]

Below, the court applies the three-step qualified immunity analysis.  *See Skop*, 485 F.3d at 1136-37.  For the following reasons, the court concludes that Defendant Sheriffs are entitled to dismissal of all of Plaintiff's claims except for his Fourth Amendment excessive force.

### (1)     Discretionary Function Analysis

As a threshold matter, the court concludes that the facts, as alleged in the Amended Complaint, show plainly that Defendant Sheriffs were, at all relevant times, on duty during Plaintiff's confinement.  That is, Plaintiff generally alleges that after he was arrested by

---

[14] Plaintiff cannot be construed as having sued Defendant Sheriffs their official capacity.

Defendant Officers, he was transferred to the custody of Defendant Sheriffs.  (Doc. 13, at 4-5).  While in the custody and supervision of the Defendant Sheriffs, Plaintiff accuses Defendant Sheriffs of "torturing" him for his refusal to give certain identifying information.  (*Id.* at 5).

Consistent with the discretionary function analysis applied by the court above with respect to the Defendant Officers, the court does not look at whether the official actually acted lawfully.  *See Sims*, 972 F.2d at 1236.  Instead, the only issue here is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the governmental officer's] discretionary duties." *Harbert Int'l, Inc.*, 157 F.3d at 1282.  Thus, for the purposes of the discretionary function analysis, Plaintiff's allegations of torture are irrelevant.  Taking custody of an arrestee and requiring him to provide identifying information, if done for a proper purpose, is clearly within a sheriff's discretionary duty under Alabama law.  In Alabama, the sheriff "has the legal custody and charge of the jail in his or her county and all prisoners committed thereto."  Ala. Code § 14-6-1.  Furthermore, the sheriff is required to obtain the name, address, and identifying information of all prisoners of the jail.  *Id.* at § 36-22-8; *see also id.* at § 15-5-30 (person must identify himself when questioned by a deputy).

Looking objectively at the circumstances described in the Amended Complaint, it is readily apparent that Defendant Sheriffs were exercising their discretionary function in maintaining custody of Plaintiff as a prisoner in the Tuscaloosa County Jail and attempting to obtain his identifying information.  Having concluded that Defendant Sheriffs were acting within the scope of their discretionary functions, the burden shifts to Plaintiff to show that Defendant Officers' conduct violated a clearly established statutory or constitutional right.  *See Skop*, 485 F.3d at 1136-37.  For the reasons outlined below, Plaintiff cannot sustain a claim for violations

28

of the Fifth, Seventh, or Eighth Amendments.  However, at this stage, the court finds that a decision on certain of Plaintiff's Fourth Amendment claims would be premature.

### (2)      Plaintiff's Fourth Amendment Claims

Plaintiff presents a number of Fourth Amendment claims in his pleadings.  The court addresses them below.

### (a)      Plaintiff's Excessive Force Claims

Plaintiff's claims against Defendant Sheriffs center predominately on allegations of physical abuse that Plaintiff suffered while in custody at the Tuscaloosa County Jail.  In response to this conduct, Plaintiff attempts to assert claims under the Fourth, Seventh, Eighth, and Fourteenth Amendments of the United States Constitution.  (Doc. 13, ¶¶ 28-29, 40-47, 57-58, 61).  Thus, the threshold issue for the court is what constitutional standard applies to Plaintiff's allegations.  Defendant claims that the Fourteenth Amendment's due process standard applies to these claims.  For the following reasons, the court determines that Plaintiff can sustain an excessive force claim, if at all, only under the Fourth Amendment as applied to the States by the Fourteenth Amendment.[15]

The heart of the issue is whether the Fourth, Eighth, or Fourteenth Amendment's standards apply to excessive force claims brought by pretrial detainees held for relatively short

---

[15] The court quickly dispenses with Plaintiff's apparent attempt to sustain an excessive force claim under the Seventh Amendment.  (Doc. 13, ¶¶ 40-41).  The Seventh Amendment guarantees only that:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend VII.  As such, the Seventh Amendment deals exclusively with the right to a jury trial and, therefore, provides no basis for Plaintiff's claims as pled.  Accordingly, Plaintiff's Count Four fails to state a claim for which relief can be granted and is due to be dismissed.

terms of detention.  In similar situations, courts have generally held that the Fourth Amendment

protections apply, not the provisions of the Eighth and the Fourteenth Amendments.[16]

Although the point at which an arrest ends and pretrial detainment begins is not always

clear, the Fourteenth Amendment only begins to protect persons "*after* the incidents of arrest are

completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the

plaintiff has been in detention awaiting trial for a significant period of time." *Garrett v. Athens-

Clarke County, Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (emphasis in original) (quoting

*Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)); *see also Albritten v.

Dougherty Cnty., Ga.*, 973 F. Supp. 1455, 1461 (M.D. Ga. 1997) (outlining treatment of the issue

by different circuits).

In this case, Plaintiff's pleadings do not contextualize his alleged mistreatment within the

duration of his confinement.  However, Plaintiff indicates that, after he was transferred into

confinement, the events of his abuse were related to his refusal to provide law enforcement with

his identifying information. (Doc. 13, at ¶¶ 50-51).  Regardless of the exact time of Plaintiff's

---

[16] Constitutional standards for permissible force depend on the custodial status of the alleged victim of the force.  To this end, the Fourth, Eighth, and Fourteenth Amendments may be thought of as existing on a spectrum.  Initially, as a pretrial detainee, a plaintiff is protected from an official's use of excessive force under either the Fourth Amendment (as applied against the States by the Fourteenth Amendment), or by the Due Process Clause of the Fourteenth Amendment, independently.  "*All* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis in original).  Although the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees in state custody are protected by the Due Process Clause of the Fourteenth Amendment.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  It is only after a defendant has been convicted that the Eighth Amendment's Cruel and Unusual Punishment Clause of the Eighth Amendment becomes operative.  *See id.* ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners"; noting further that the applicable standard is the same for both Eighth and Fourteenth Amendment violations, such that, "decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.") (citing *Jordan*, 38 F.3d at 1564-65; *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986)).  Clearly, the Eighth Amendment provides no basis for Plaintiff's excessive force claim because at all relevant times he was indisputably a pretrial detainee.

alleged abuse, it is clear that Plaintiff had not "been in detention awaiting trial for a significant period of time." *Garrett*, 378 F.3d at 1279 n.11.

Therefore, because Plaintiff had not been in detention awaiting trial for a significant period of time, the court concludes that the alleged abuse (which he claims) occurred, if at all, during this post-arrest, pre-charge custody is better analyzed under the Fourth Amendment's "reasonableness" standard, rather than under a "substantive due process" approach. *See Albright*, 510 U.S. at 274 (noting that "[t]he Framers considered the matter of pretrial deprivations of liberty, and drafted the Fourth Amendment to address it."). When judging Fourth Amendment excessive force claims the issue is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

As pled, the facts indicate that the physical force used against Plaintiff upon his arrival at the Tuscaloosa County Jail was not objectively reasonable. Plaintiff claims that he refused to provide the Defendant Sheriffs his name and fingerprints and that resulted in his being beaten and tased after he was handcuffed and defenseless. (Doc. 13, ¶¶ 41, 46).[17] Plaintiff alleges that this abuse happened several times and resulted in various injuries including his right shoulder tendon being torn in half. (*Id.* at ¶¶ 22-23). These facts extend well beyond what Defendant Sheriffs suggest was "a minimal amount of force" necessary to complete their task of fingerprinting and otherwise identifying Plaintiff. (*See* Doc. 20, at 4).

---

[17] Of course, Plaintiff is simply incorrect in assuming that the Fifth Amendment permits him to avoid providing law enforcement with his name and fingerprints. It is well-established that compelling the production of names and fingerprints does not invoke the protections of the Fifth Amendment's privilege against self-incrimination. *See, e.g.*, *Hiibel v. Sixth Judicial District Court of Nevada, Humbolt County*, 542 U.S. 177 (2004) (Fifth Amendment did not protect defendant's disclosure of name); *United States v. Gibson*, 444 F.2d 275, 277 (5th Cir. 1971) ("The taking of fingerprints does not fall within the category of communications or testimony so as to be protected by the Fifth Amendment. The taking of a fingerprint exemplar after arrest without counsel being present does not violate one's Fifth Amendment privilege against self-incrimination . . . .").

Defendant Sheriffs counter that Plaintiff is exaggerating the force used against him, and that what force was used was necessary to "maintain and restore discipline." (Doc. 20 at 3-4 (denying the officers struck Plaintiff)). On a motion to dismiss, however, the court must assume the veracity of Plaintiff's well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678.[18] Thus, for the purposes of this Motion, the court must assume that Plaintiff was handcuffed and then tased and beaten to the extent that he suffered a torn right shoulder tendon among other injuries. (Doc. 13, ¶¶ 41, 46, 51). Assuming the veracity of these allegations (as it must), the court has no trouble concluding that Plaintiff has sufficiently pled facts suggesting that Defendant Sheriffs' conduct was not objectively reasonable. Accordingly, at least at this stage, Plaintiff's Fourth Amendment excessive force claims survive Defendant Sheriff's Motion to Dismiss (Doc. 20).

### (b)        Plaintiff's False Imprisonment Claims

Plaintiff also asserts Fourth Amendment false imprisonment claims against Defendant Sheriffs for his allegedly unlawful detention. Defendant Sheriffs argue that the law required them to take Plaintiff from Defendant Officers and confine him; therefore, they argue, Plaintiff's jailers cannot be held liable under section 1983 for Plaintiff's subsequent false imprisonment. (Doc. 20, at 2). The court agrees.

As a general matter, courts have held that a jailer is only liable under section 1983 for the illegal detention of an inmate "when he unreasonably detains the inmate for arraignment or release, or possesses an affirmative knowledge of the illegality of the arrest." *Wood v. Worachek*, 618 F.2d 1225, 1231 (7th Cir. 1980); *see also Bevins v. Keesee*, 930 F.2d 24 (6th Cir. 1991). Otherwise, "[i]f the errors take place outside of [a jailer's] realm of responsibility, he

---

[18] Admittedly, at this stage, the legal cards are stacked in Plaintiff's favor. In deciding a Rule 12(b)(6) motion to dismiss, the court views the allegations in the complaint in the light most favorable to the nonmoving party, *see Watts*, 495 F.3d at 1295, and because in this case Plaintiff is proceeding *pro se*, his pleadings are also to be "liberally construed." *Hughes*, 350 F.3d at 1160.

cannot be found liable because he has acted reasonably and in good faith." *Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976) (holding instruction on reasonable, good-faith defense should have been given in false imprisonment action where the defendant sheriff kept the plaintiff imprisoned because of typographical error in grand jury report); *see also Wood*, 618 F.2d at 1231-32 ("Where a prisoner is placed in custody in a city jail, those responsible for his confinement are entitled to a reasonable opportunity to make an investigation into the legal authority to confine that prisoner"); *Bevins v. Keesee*, 930 F.2d 24 (6th Cir. 1991). Accordingly, Plaintiff's false imprisonment claims against Defendant Sheriffs are due to be dismissed.

In this case, the error, if any, in Plaintiff's arrest and resulting confinement was made by Defendant Officers. With regard to his false imprisonment claim, Plaintiff has not pled any facts suggesting a constitutional violation on the part of his jailers, Defendant Sheriffs, in connection with merely holding him in custody.[19] Likewise, Plaintiff does not assert that Defendant Sheriffs had any affirmative knowledge of the illegality of his arrest or any basis to suspect that Plaintiff was arrested without probable cause. Any reading of Plaintiff's allegations makes clear that he places sole responsibility for his alleged false imprisonment on Defendant Officers. In fact, Plaintiff's Amended Complaint merely indicates that Plaintiff was transferred into custody of the Defendant Sheriffs in the normal course of the intake process. Therefore, because Plaintiff's false imprisonment claims against Defendant Sheriffs are actually based on errors which were beyond the limited scope of responsibility they had as Plaintiff's jailers, Defendant Sheriffs

---

[19] Here, the court differentiates between Plaintiff's false imprisonment claim, and his allegations of excessive force suffered during his confinement. That is, under Plaintiff's false imprisonment claim, the court is concerned with the legality of Plaintiff's confinement. While under Plaintiff's excessive force claim against Defendant Sheriffs, the court is concerned with the treatment of Plaintiff during his confinement in the Tuscaloosa County Jail. Thus, under Plaintiff's false imprisonment claim, the reasonableness of Plaintiff's confinement relates to the basis of his confinement alone and not any alleged abuse he suffered while held in custody.

cannot be liable under section 1983 for Plaintiff's false imprisonment.  Accordingly, Plaintiff's false imprisonment claims against Defendant Sheriffs are due to be dismissed.

(3)     <strong>Plaintiff's Fifth Amendment Claims</strong>

Plaintiff brings the same Fifth Amendment claims against Defendant Sheriffs as he asserted against Defendant Officers. And those claims necessarily fail for the same reasons. Plaintiff's conclusory and vague statement fails to state any plausible claim for relief under the Fifth Amendment against Plaintiff.

First, because Plaintiff has not claimed any property was taken from him by Defendant Sheriffs, his Just Compensation claim fails.   Second, Plaintiff cannot sustain a Fifth Amendment's Due Process Clause claim against Defendant Sheriffs, because Plaintiff alleges only state -- and not federal -- action.  *See, e.g.*, *Sims*, 84 F. Supp. 2d at 1288 (dismissing Fifth Amendment Due Process Clause claims against a sheriff and his deputies).  Accordingly, any claim which Plaintiff attempts to state against Defendant Sheriffs under the Due Process Clause of the Fifth Amendment is due to be dismissed.  Finally, as discussed above, even were the court to construe Plaintiff's Amended Complaint as attempting to bring a Fourteenth Amendment Due Process Clause claim against Defendant Sheriffs, Plaintiff's allegation is subsumed within his Fourth Amendment allegations of excessive force.  *See Garrett*, 378 F.3d at 1279 n.11; *see also Tinney*, 77 F.3d at 381 (citing *Albright*, 510 U.S. 266; *Graham*, 490 U.S. at 395).

**D.**     **Plaintiff's State Claims Against Sheriffs**

Plaintiff attempts to assert several pendent state law claims, including claims for false imprisonment, assault and battery, and negligent infliction of emotional distress.  (*See* Doc. 13, ¶¶   28, 48-51, 59-63).  Although at this stage Defendant Sheriffs do not directly move for the dismissal of these claims, Plaintiff's negligent infliction of emotional distress claim is due to be dismissed because, as discussed above, Alabama does not recognize the independent tort of

negligent infliction of emotional distress.  *Roberts*, 114 F. Supp. 2d at 1215 (citation omitted).  Accordingly, all Defendants are entitled to judgment as a matter of law as to the claim made in Count Nine, but not the remainder of Plaintiff's state law claims for false imprisonment and assault and battery.

### E.      Plaintiff's Other Claims

In addition to Plaintiff's traditional federal and state law claims, Plaintiff seems to assert two "other" claims against Defendants.  (Doc. 13, ¶¶ 57-58, 64-65 (Counts Eight and Ten)).  At this juncture, the court finds it appropriate to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Even though Plaintiff's Amended Complaint is liberally construed, within these counts, the court cannot discern any "claim to relief that is plausible on its face."  *See Twombly*, 550 U.S. at 570.

### 1.      Plaintiff's Count Eight — Miscellaneous "Human Rights" Violations

Count Eight of Plaintiff's Amended Complaint attempts to assert a claim against Defendant Sheriffs for various unspecified "human rights" violations.  (Doc. 13, at ¶¶ 57-58).  Plaintiff has not identified any independent legal basis for his allegations.  Plaintiff only vaguely asserts and declares violations of his "human rights."  The court construes this allegation as the redundant assertion of excessive force claims against Defendant Sheriffs, which are more properly subsumed within Plaintiff's Fourth Amendment excessive force claims brought pursuant to 42 U.S.C. § 1983.  Therefore, the claim asserted in Count Eight is due to be dismissed.

### 2.      Plaintiff's Count Ten — Minimum Contact Doctrine

Similarly, Count Ten of Plaintiff's Amended Complaint asserts a claim for violation of the "Minimum Contact Doctrine" against Defendant Officers.  (Doc. 13, at ¶¶ 64-65).  In that

count, Plaintiff alleges that Defendant Officers violated "the minimum contact doctrine by coming on to private property, [trespassing] and arresting plaintiff without probable cause and using excessive force." (*Id.* at ¶ 65).  Plaintiff again fails to provide any legal basis to support such a claim.  Moreover, and in any event, the court finds this claim is redundant of Plaintiff's Fourth Amendment false arrest claim.  Therefore, Plaintiff has failed to assert a claim upon which relief can be granted, and Count Ten is due to be dismissed.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (Docs. 17, 20) are due to be granted in part and denied in part.

### A.    Defendant Officers' Motion to Dismiss (Doc. 17)

Defendant Officers' Motion (Doc. 17) is due to be granted with respect to the claims in the following counts asserted in Plaintiff's Amended Complaint (Doc. 13):

- Count Two: Fourth Amendment excessive force claims;
- Count Three: Fifth Amendment just compensation and due process claims;
- Count Five: Eighth Amendment excessive bail and cruel and unusual punishment claims;
- Count Seven: generic 42 U.S.C. § 1983 excessive force claims;
- Count Nine: state law negligent infliction of emotional distress claims;
- Count Ten: claims for violation of the "Minimum Contact Doctrine"; and
- Count Eleven: "Joinder of Claims" under Rule 18 and 28 U.S.C. § 1367.

Accordingly, each of these claims is to be dismissed.

Defendant Officers' Motion (Doc. 17) is due to be denied to the extent Plaintiff's Amended Complaint (Doc. 13) states the following claims for relief against Defendant Officers:

- Count One: state law false arrest and false imprisonment claims; and
- Counts One & Two: Fourth Amendment false arrest and false imprisonment claims.

### B.      Defendant Sheriffs' Motion to Dismiss (Doc. 20)

Defendant Sheriffs' Motion (Doc. 20) is due to be granted with respect to the claims in

the following counts asserted in Plaintiff's Amended Complaint (Doc. 13):

- Count One — state and federal false imprisonment claims;
- Count Two — Fourth Amendment false imprisonment claims;
- Count Three — Fifth Amendment just compensation and due process claims;
- Count Four — Seventh Amendment excessive force claims;
- Count Five — Eighth Amendment cruel and unusual punishment claims;
- Count Eight — claims for various unspecified human rights violations;
- Count Nine — state law negligent infliction of emotional distress claims;
- Count Eleven — "Joinder of Claims" under Rule 18 and 28 U.S.C. § 1367.

Accordingly, each of these claims is due to be dismissed.

Defendant Sheriffs' Motion (Doc. 20) is due to be denied to the extent Plaintiff's

Amended Complaint (Doc. 13) states the following claims for relief against Defendant Sheriffs:

- Counts One & Two — Fourth Amendment excessive force claims; and
- Count Six — state law assault and battery claims.

Finally, Plaintiff's Motion for Judge's Rule (Doc. 28) is due to be administratively

terminated.

A separate order will be entered.

**DONE** and **ORDERED** this June 22, 2015.


R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE